# UNITED STATES DISTRICT COURT

for the

## DISTRICT OF MASSACHUSETTS

## WESTERN DIVISION

| | |
|---|---|
| ANTHONY D. GULLUNI,<br>**DISTRICT ATTORNEY for HAMPDEN COUNTY**<br>**in the COMMONWEALTH OF MASSACHUSETTS,** | )<br>)<br>)<br>) |
| Plaintiff | ) |
| | ) |
| v. | )   **CIVIL ACTION NO.** |
| | ) |
| **NATHANIEL R. MENDELL,**<br>**ACTING UNITED STATES ATTORNEY**<br>**for the DISTRICT OF MASSACHUSETTS,**<br>**UNITED STATES DEPARTMENT OF JUSTICE,** | )<br>)<br>)<br>) |
| | ) |
| Defendant | ) |

## <u>COMPLAINT</u>

This is a civil action wherein the Plaintiff seeks judicial review pursuant to the Administrative Procedures Act ("APA"), at 5 U.S.C. §§ 701-706, from the Defendant's wrongful withholding of "false" or "falsified" Springfield Police Department reports and attendant photographs or video/digital images, as named in the publicly released Department of Justice Report, dated July 8, 2020, entitled "Investigation of the Springfield, Massachusetts Police Department's Narcotics Bureau" ["Report"], co-authored by the United States Department of Justice's - Civil Rights Division and the United States Attorney's Office for the District of Massachusetts, after Plaintiff's demand to the Defendant for production or disclosure pursuant to the federal Housekeeping Act, at 5 U.S.C. § 301, and the prescribed

Department of Justice *Touhy*-regulations, see *United States ex.rel. Touhy v. Ragen*, 340 U.S. 462 (1951), applicable to the request, at 28 C.F.R. § 16.21 et seq., was denied.

## I.  PARTIES

1.  Plaintiff, Anthony D. Gulluni, is sworn as District Attorney for Hampden County in the Commonwealth of Massachusetts ("HDA").  HDA is a state agency of the Commonwealth of Massachusetts.  By statute, M.G.L. c. 12, §§ 12-13, 27; G.L. c. 218, § 27A, the HDA is the primary prosecutorial authority for the western district in the Commonwealth of Massachusetts, a district that geographically includes all cities and towns located in Hampden County, Massachusetts.  HDA Gulluni serves as the chief law enforcement officer in the district. The HDA is principally located in Springfield, Massachusetts at the Roderick L. Ireland Courthouse, 50 State Street, 3rd Floor, Springfield, Massachusetts 01102, with a telephone number of (413) 747-1000.  Anthony D. Gulluni brings this action in his official capacity.

2.  Defendant, Nathaniel R. Mendell, is a natural person and currently serves as the Acting United States Attorney for the District of Massachusetts.  The United States Attorney's Office for the District of Massachusetts ("USA-MA"), is a governmental agency of the United States Department of Justice ("DOJ").  The USA-MA is led by an appointed United States Attorney for the District of Massachusetts.  The USA-MA represents the DOJ on all federal legal matters in the District of Massachusetts, and has a Civil Division that includes a Civil Rights Unit.  The USA-MA's principal office is located at the John Joseph Moakley United States Federal Courthouse, 1 Courthouse Way, Suite 9200, Boston, Massachusetts 02210, with a telephone number of (617) 748-3100.  Acting United States Attorney Nathaniel R. Mendell is being sued in his official capacity.

## II.   JURISDICTION

3.  Plaintiff's action is for a violation of the Administrative Procedures Act ("APA"), and is brought pursuant to the provisions of 5 U.S.C. §§ 701-706.

4.  Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 (federal question).

## III.   VENUE

5.  This action is brought in the Western Division of the United States District Court for the District of Massachusetts, pursuant to 28 U.S.C. § 1391(e)(1), as the Plaintiff principally resides in Springfield, Massachusetts in Hampden County, geographically located in the Western Division of the District of Massachusetts, and this is a civil action in which a Defendant is an agency of the United States, or an officer or employee of the United States or any agency thereof acting in his official capacity.

## IV.   FACTUAL ALLEGATIONS

1.  The Plaintiff, Anthony D. Gulluni, is sworn as the District Attorney for the Hampden District (HDA) in the Commonwealth of Massachusetts.  The HDA is the primary prosecutorial agency for Hampden County in the western district of the Commonwealth of Massachusetts.  M.G.L. c. 12, §§ 12-13, 27; G.L. c. 218, § 27A.

2.  In the Commonwealth of Massachusetts, the district attorney, in his official capacity, is recognized by case law to be "the people's elected advocate for a broad spectrum of societal interests - from ensuring that criminals are punished for wrongdoing, to allocating limited resources to maximize public protection." *Commonwealth v. Gordon*, 410 Mass. 498, 500 (1991).  See *Commonwealth v. Clerk-Magistrate of West Roxbury Div. of Dist. Court*, 439 Mass. 352, 360 (2003); *Commonwealth v. Clerk of Boston Div. of Juvenile Court Dep't*, 432 Mass. 693, 699 (2000).

3. The Plaintiff, Anthony D. Gulluni, in his official capacity as HDA, has wide discretion in determining whether to prosecute an individual, *Commonwealth v. Ware*, 482 Mass. 717, 730 (2019), "with due regard to the constitutional and other rights of the defendant." *Smith v. Commonwealth*, 331 Mass. 585, 591 (1954), citing *Berger v. United States*, 295 U.S. 78, 88-89 (1935).

4. The HDA serves a population of 468,467 (est. 2016 Census), in five (5) cities and eighteen (18) towns in Hampden County, Massachusetts, and prosecutes cases in state courts located in Hampden County, Massachusetts, including five (5) district courts (including Springfield District Court), two (2) juvenile courts (including Springfield Juvenile Court), and one (1) superior court (Hampden County Superior Court).

5. In Fiscal Years 2016 through 2020, the eight (8) state courts located in Hampden County entered cumulative totals of 102,605 criminal cases. *See* Massachusetts Trial Court Statistical Reports and Dashboards, A Listing of Case Statistics for Trial Court Departments by Fiscal Year, https://www.mass.gov/info-details/trial-court-statistical-reports-and-dashboards#statistics-2014-2020-.  Each one of those cases represented an individual criminal defendant whose case was filed in a state trial court, or a division of a state trial court over that five-year period.

6. The Plaintiff, Anthony D. Gulluni, in his official capacity as HDA, is sworn to uphold the state and federal constitutions and the laws of the Commonwealth in the performance of his duties, including the constitutional and statutory provisions related to a prosecutor's discovery obligations.   *In the Matter of a Grand Jury Investigation*, 485 Mass. 641 (2020); *Giglio v. Unites States*, 405 U.S. 150 (1972); *Brady v. Maryland,* 373 U.S. 83 (1963).

7.  The Plaintiff, Anthony D. Gulluni, in his official capacity as HDA, is a member of the Massachusetts Bar, and is subject to the procedural rules of the courts of the Commonwealth, including the applicable rules of criminal procedure related to a prosecutor's discovery obligations.  Mass. R. Crim. P. 14, as amended 444 Mass. 1518 (2005).

8.  The Plaintiff, Anthony D. Gulluni, in his official capacity as HDA, is a member of the Massachusetts Bar, and is subject to the rules of professional responsibility, including, where appropriate, undertaking procedural and remedial measures in the exercise of his discovery obligations.  Mass. R. Prof. C. 3.8, Special Responsibilities of a Prosecutor, 3.8 (d), (g), (i), and (j) and Comment 1.

9.  The Plaintiff, Anthony D. Gulluni, in his official capacity as HDA, employs Assistant District Attorneys, appointed by him, to assist in the performance of his duties.

10. The HDA's Assistant District Attorneys, in their official capacities, are sworn to uphold the state and federal constitutions and laws of the Commonwealth in the conduct of their duties, including the constitutional and statutory provisions related to a prosecutor's discovery obligations.  *In the Matter of a Grand Jury Investigation*, 485 Mass. 641 (2020); *Giglio v. Unites States*, 405 U.S. 150 (1972); *Brady v. Maryland,* 373 U.S. 83 (1963).

11. The HDA's Assistant District Attorneys are members of the Massachusetts Bar, and are subject to the procedural rules of the courts of the Commonwealth, including the applicable rules of criminal procedure related to a prosecutor's discovery obligations. Mass. R. Crim. P. 14, as amended 444 Mass. 1518 (2005).

12. The HDA's Assistant District Attorneys are members of the Massachusetts Bar, and are subject to the rules of professional responsibility, including, where appropriate, undertaking procedural and remedial measures in the exercise of their discovery obligations. Mass. R. Prof. C. 3.8, Special Responsibilities of a Prosecutor, 3.8 (d), (g), (i), and (j) and Comment 1.

13. One of the prosecutorial functions of the HDA, as defined by state and federal law, and court rule, is to disclose to an individual charged with a crime being prosecuted by the HDA any known relevant, material, exculpatory evidence in its possession, custody or control, even without a request from the individual charged. *Committee for Pub. Counsel Servs. v. Attorney Gen.*, 480 Mass. 700, 731 (2018); *Commonwealth v. Ayala*, 481 Mass. 46, 56 (2018).  *See Commonwealth v. Bing Sial Liang*, 434 Mass. 131, 134-135 (2001), citing *United States v. Agurs*, 427 U.S. 97, 106-108 (1976) (prosecutors' duty to  disclose exculpatory evidence not limited to cases where there is a request for such evidence).

14. In the Commonwealth of Massachusetts, the possession, custody or control of potentially exculpatory information by the prosecutor, by court rule, is defined as persons under the prosecutor's direction and control, or persons who have participated in investigating or evaluating the case and either regularly report to the prosecutor's office or have done so in a particular case.   Mass. R. Crim. P. 14, as amended 444 Mass. 1518 (2005). *Commonwealth v. Beal*, 429 Mass. 530, 531 (1999) (prosecutors' duty to disclose extends to information in their possession or in possession of persons subject to their control).

15. The Springfield Police Department ("SPD") is a local law enforcement agency in the City of Springfield, Massachusetts, a city geographically located in Hampden County, in the Commonwealth of Massachusetts.

16. Officers of the SPD are required by state statute or court rule to provide arrest, incident, or investigatory reports to satisfy probable cause determinations before a magistrate or court.  *See, e.g.,* Mass. R. Crim. P. 3(g), as appearing 442 Mass. 1502 (2004); G.L. c. 276, § 58A(4); G.L. c. 276, § 1.

17. SPD arrest, incident, or investigatory reports and attendant photographs or video/digital images, among other materials, are provided to HDA assistant district attorneys to fulfill the prosecutor's discovery obligations to an individual charged with a crime.

18. Officers of the SPD testify to the content of arrest, incident, or investigatory reports, and attendant photographs or video/digital images, under oath, in grand jury proceedings and at pretrial, trial, and post-conviction evidentiary hearings of criminally charged individuals in Hampden County Superior Court, Springfield District Court, and Springfield Juvenile Court.

19. On July 8, 2019, the Defendant USA-MA publicly released a report, of twenty-eight pages in length, co-authored by the Defendant USA-MA and the United States Department of Justice – Civil Rights Division [DOJ DIVISION] entitled "Investigation of the Springfield, Massachusetts Police Department's Narcotics Bureau ["Report"].  A copy of the Report is attached, and noted as Exhibit A.  The contents of the Report, in total, are incorporated herein.

20. The Report's investigation of the SPD Narcotics Bureau was stated to have begun on April 13, 2018, and spanned twenty-eight (28) months from its initiation to the release of its findings.  The statutory authority for the investigation detailed in the report was pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 34 U.S.C. § 12601.

21. The Executive Summary of the Report, Report at 3, states that investigators jointly from the Defendant USA-MA and the United States Department of Justice - Civil Rights Division ("DOJ DIVISION") conducted a comprehensive review of 114,000 pages of Springfield Police Department documents, including an unspecified number of "incident reports" and "investigative reports."

22. The Report, Report at 9, states that Defendant USA-MA and DOJ DIVISION investigators sought and received SPD documents, including 1,700 prisoner injury files, 26,000 arrest reports and over 700 use-of-force reports created from 2013 through 2019.

23. The Report, Report at 2, states that Defendant USA-MA and DOJ DIVISION investigators reviewed 5,500 arrest reports and 10 use-of-force reports from the SPD's Narcotics Bureau from 2013-2018.

24. The Report, Report at 2, states that the Defendant USA-MA and DOJ DIVISION investigators found "examples where [SPD] Narcotics Bureau officers falsified reports to disguise or hide their use of force."

25. The Report, Report at 9, states there was "… a pattern or practice … [where SPD] officers made false reports that were inconsistent with other available evidence, including video and photographs…."

26. The Report, Report at 2, states the Defendant USA-MA and DOJ DIVISION investigators concluded that "there is reasonable cause to believe that [SPD] Narcotics Bureau officers engage[d] in a pattern or practice of excessive force in violation of the Fourth Amendment of the United States Constitution."

27. The Plaintiff, Anthony D. Gulluni, in his official capacity as HDA, did not conduct the investigation and was not informed of the process or reported findings of the Defendant's

USA-MA's and DOJ DIVISION's twenty-eighth month long joint investigation of the SPD's Narcotics Bureau, prior to the Report's publication.

28. The Plaintiff, Anthony D, Gulluni, in his official capacity as HDA, does not have knowing possession, custody or control of the SPD officers' reports deemed "false" or "falsified" as detailed in the Report.

29. After the Report release, HDA First Assistant District Attorney [HDA First ADA] Jennifer N. Fitzgerald received a telephone call from Torey Cummings, an Assistant United States Attorney ("AUSA") with the Civil Rights Division of the Defendant USA-MA.  AUSA Cummings told HDA First ADA Fitzgerald that she had been involved in the investigation and issuance of the Report.

30. AUSA Cummings' stated purpose of the telephone call was to inquire if the HDA had "any questions" about the Report.  The parties agreed to speak after the HDA had an adequate time to review the contents of the Report.

31. On July 20, 2020, HDA First ADA Fitzgerald spoke with AUSA Cummings, by telephone, and, in her official capacity, orally requested of AUSA Cummings that the HDA be provided with the SPD reports that investigators referenced in the Report where "officers falsified reports" or "officers made false reports".  HDA First ADA Fitzgerald told AUSA Cummings that HDA assistant district attorneys needed to identify the false or falsified SPD reports and review them to determine their discovery obligations, pursuant to *Brady* [*v. Maryland*, 373 U.S. 83, 87 (1963)] and the Massachusetts Rules of Criminal Procedure [Mass. R. Crim. P. 14, as appearing in 442 Mass. 1518 (2004)].  The parties agreed to speak after AUSA Cummings had sufficient time to consider the HDA's request.

32. On July 28, 2020, HDA First ADA Fitzgerald left a voice message for AUSA Cummings concerning the status of the HDA's July 20th request for the SPD's officers' false or falsified reports.

33. Later in the day on July 28th, HDA First ADA Fitzgerald received an email from AUSA Cummings stating that the request for the SPD's false or falsified reports was still under consideration.

34. Thereafter, on August 6, 2020, HDA First ADA Fitzgerald, AUSA Cummings, and Jude Volek, an AUSA with the DOJ DIVISION, spoke by telephone.

35. AUSA Volek told HDA First ADA Fitzgerald that he had participated in the investigation and issuance of the Report.

36. In the August 6th telephone conversation, HDA's oral request for the production of the SPD officers' false or falsified reports was denied.

37. During the August 6th telephone conversation, AUSA Cummings and AUSA Volek collectively advised HDA First ADA Fitzgerald that after discussion with members of the Department of Justice's Professional Responsibility Unit and the DOJ DIVISION, the Defendant USA-MA and the DOJ concluded it would withhold the SPD's false or falsified reports from the HDA.

38. The grounds AUSA Cummings and AUSA Volek provided HDA First ADA Fitzgerald to withhold the "false"or "falsified" reports were: (1) the requested reports were confidential and (2) available from the SPD; (3) the calculus for exculpatory information was different for the Department of Justice; and, (4) the rules for *Brady* material did not extend to the DOJ DIVISION.

39. In response, HDA First ADA Fitzgerald told AUSA Cummings and AUSA Volek, during the August 6th telephone conversation, that the HDA was only seeking the production of SPD officers' false or falsified reports as detailed in the Report, and was not seeking any confidential, privileged, or investigatory material.

40. AUSA Cummings and AUSA Volek then told HDA First ADA Fitzgerald to request the SPD officers' false or falsified reports from the SPD.

41. When further questioned by HDA First ADA Fitzgerald about this statement, AUSA Cummings and AUSA Volek acknowledged that SPD was not told specifically which reports of the thousands of reports that had been provided to the Defendant USA-MA and DOJ DIVISION investigators during the investigation were false or falsified, as found in the Report.  A fact later confirmed by the SPD.

42. On August 19, 2020, the Plaintiff, Anthony D. Gulluni, in his official capacity as HDA, wrote a letter to Andrew E. Lelling, then-United States Attorney for the Defendant (USA-MA), in his official capacity as lead attorney for the Defendant USA-MA.  A copy of the letter is attached, and noted as Exhibit B.   The contents of the letter, in total, are incorporated herein.

43. On August 19, 2020, the Plaintiff, Anthony D. Gulluni, in his official capacity as HDA, wrote a letter to Eric S. Dreiband, then-Assistant Attorney General (AAG), in his official capacity as lead attorney for the DOJ DIVISION  that joined the Defendant USA-MA in the investigation and issuance of the Report.  A copy of the letter is attached, and noted as Exhibit C.  The contents of the letter, in total, are incorporated herein.

44. The Plaintiff's, Anthony D, Gulluni's August 19th letter to then-USA-MA Lelling was sent by FedEx courier, and delivered to his principal address on August 20, 2020 at 11:41 am.

45. The Plaintiff's, Anthony D. Gulluni's, August 19th letter to then-AAG Dreiband was sent by FedEx courier, and delivered to his principal address on August 20, 2020 at 9:54 am.

46. The Plaintiff's, Anthony D. Gulluni's, August 19th letters to then-USA-MA Lelling, in his official capacity as lead attorney for the Defendant USA-MA, and then-AAG Dreiband, in his official capacity as lead attorney for the DOJ DIVISION, were identical in content, and requested of each the production or disclosure of "false" or "falsified" SPD reports and attendant photographs or video/digital images, more specifically described in the letter at pp. 4-5, and generally categorized in the publicly released Report, co-authored by the Defendant USA-MA and DOJ DIVISION.

47. The Plaintiff, Anthony D. Gulluni, in his official capacity as HDA, requested the production of documents, pursuant to the federal Housekeeping Act found at 5 U.S.C. § 301, and the prescribed DOJ regulations applicable to the request found at 28 C.F.R. § 16.21 et seq., a so-called *Touhy [v. Ragen*, 340 U.S. 462 (1951),] request.

48. The Plaintiff's, Anthony D. Gulluni's, request for production or disclosure of documents, in his official capacity as HDA, from then-USA-MA Lelling, in his official capacity as lead attorney for the Defendant USA-MA, and then-AAG Dreiband, in his official capacity as lead attorney for the DOJ DIVISION, specifically sought, at pp.4-5:

   a. A copy of all Springfield Police Department reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7), determined

as examples where Narcotics Bureau officers falsified reports to disguise or hide their use of force[;]";

    b.  A copy of all Springfield Police Department reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7), determined as "…a pattern or practice …. [where] officers made false reports that were inconsistent with other available evidence, including video and photographs….", and;

    c.  A copy of all photographs, or video/digital material determined as inconsistent with any Springfield Police Department officers' reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7).

49. Between August 20, 2020 and September 14, 2020, then-USA-MA Lelling, in his official capacity as lead attorney for the Defendant USA-MA, did not provide the Plaintiff, Anthony D. Gulluni, in his official capacity as HDA, with a response, either verbally or in writing, to the Plaintiff's, Anthony D, Gulluni's, August 19th demand for the production or disclosure of "false" or "falsified" SPD reports and attendant photographs or video/digital images, more specifically described in the Plaintiff's, Anthony D. Gulluni's August 19th letter, at pp. 4-5, and generally categorized in the publicly released Report, co-authored by the Defendant USA-MA and DOJ DIVISION.

50. Between August 20, 2020 and September 14, 2020, then-AAG Dreiband, in his official capacity as lead attorney for the DOJ DIVISION, did not provide the Plaintiff, Anthony D. Gulluni, in his official capacity as HDA, with a response, either verbally or in writing,

to the Plaintiff's, Anthony D. Gullini's, August 19th demand for the production or disclosure of "false" or "falsified" SPD reports and attendant photographs or video/digital images, more specifically described in HDA Gulluni's August 19th letter, at pp. 4-5, and generally categorized in the publicly released Report, co-authored by the Defendant USA-MA and DOJ.

51. On September 14, 2020, the Plaintiff, Anthony D. Gulluni, in his official capacity as HDA, wrote a second letter to then-USA-MA Lelling, again in his official capacity as lead attorney for the Defendant USA-MA.  A copy of the letter is attached, and noted as Exhibit D.  The contents of the letter, in total, are incorporated herein.

52. On September 14, 2020, the Plaintiff, Anthony D. Gulluni, in his official capacity as HDA, wrote a second letter to then- AAG Dreiband, again in his official  capacity as lead attorney for the DOJ DIVISION.  A copy of the letter is attached, and noted as Exhibit E.  The contents of the letter, in total, are incorporated herein.

53. The Plaintiff's, Anthony D Gulluni's, September 14th letter to then-USA-MA Lelling was sent, by FedEx courier, and delivered to his principal address on September 15, 2020 at 12:08 am.

54. The Plaintiff's, Anthony D. Gulluni's, September 14th letter to Defendant AAG Dreiband was sent by FedEx courier, and delivered to his principal address on September 15, 2020 at 10:18 am.

55. The Plaintiff's, Anthony D. Gulluni's, second letters to then-USA-MA Lelling, in his official capacity as lead attorney for the Defendant USA-MA, and then-AAG Dreiband, in his official capacity as lead attorney for the DOJ DIVISION, were identical in content, and again requested of each the production or disclosure of "false" or "falsified" SPD

reports and attendant photographs or video/digital images, more specifically described in the letter at pp. 4-5, and generally categorized in the publicly released Report, co-authored by the Defendant USA-MA and the DOJ DIVISION.

56.  The Plaintiff's, Anthony D. Gulluni's, September 14th letters, in his official capacity as HDA, reminded the federal prosecutors that the information sought fell squarely within the type of information federal prosecutors routinely seek, evaluate, and disclose pursuant to the DOJ's so-called *Giglio* Policy, appearing at United States Department of Justice, Justice Manual, Tit. 9-5.100 (updated Jan. 2020) (Manual), https://www.justice.gov/jm/jm-9-50000-issues-related-trials-andother-court-proceedings[https//perma.cc/NKL2-YZ2J].

57. On October 29, 2020, then-USA-MA Lelling, in his official capacity as lead attorney for the Defendant USA-MA, served a letter, dated October 21, 2020, upon the Plaintiff, Anthony D. Gulluni, in his official capacity as HDA, by electronic mail.  Then-USA-MA Lelling's letter responded to the Plaintiff's, Anthony D. Gulluni's, August 19th and September 14th letters.  A copy of the letter is attached, and noted as Exhibit F.  The contents of the letter, in total, are incorporated herein.

58. Then-USA-MA Lelling's October 21st letter to the Plaintiff, Anthony D. Gulluni, notified him that "[a]fter carefully considering [the Plaintiff's, Anthony D. Gulluni's] request … and reviewing the relevant procedural and substantive law, [then-USA-MA Lelling] determined that [the Plaintiff's, Anthony D. Gulluni's] requests [were] improper under the applicable substantive and procedural requirements.  Therefore, [then-USA-MA Lelling would not] authorize the disclosure of the official information that [the Plaintiff, Anthony D. Gulluni] requested".

59. The stated grounds for the denial of the production or disclosure of all photographs, or video/digital material determined as inconsistent with any SPD officers' reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7), as requested in the August 19th and September 14th letters of the Plaintiff, Anthony D. Gulluni, to then-USA-MA Lelling, in his official capacity as the lead attorney for the Defendant USA-MA, were two-fold, and founded upon 28 C.F.R. § 16.26(a)(2) and 28 C.F.R. § 16.26 (b)(5): namely, (1) the requested information was privileged; and, (2) the requested information belongs to the SPD.

60. Then-USA-MA Lelling claimed he based his decision to deny production of the requested documents to the Plaintiff, Anthony D. Gulluni, upon two privileges.  First, then-USA-MA Lelling stated "the documents sought [were] subject to the work product privilege because they reflect the thoughts and impressions of DOJ attorneys, paralegals and investigators[,]" without an extraordinary justification for release.  Then-USA-MA Lelling wrote that, "[h]ere, there is no 'extraordinary justification.'  As prosecutors we are sympathetic to the need you expressed in your letter 'to meet my constitutional, statutory and ethical obligations' regarding disclosure of the information about police misconduct … however, the thoughts and impressions of the [Defendant USA-MA] and DOJ employees contained in the Report do not amount to 'factual findings and legal conclusions binding on, or admissible in, any court.'"  Second, then-USA-MA Lelling stated "this Office [Defendant USA-MA] has determined that the documents sought are subject to the law enforcement privilege because they would reveal investigative records

compiled in connection with an open and ongoing civil investigation … and would interfere with these ongoing law enforcement proceedings."

61. Then-USA-MA Lelling claimed these privileges, on behalf of the Defendant USA-MA and then-AAG Dreiband and the DOJ DIVISION, even though the Plaintiff's, Anthony D. Gulluni's, August 19th and September 14th letters did not request any documents from the investigation that consisted of "… IIU files, training materials, or other internal, confidential or privileged documents of the [SPD] provided to investigators, or incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7) determined not to contain false or falsified information, or statements, notes or recordings of investigators' interviews with [SPD] officers, City of Springfield officials or community members", and "the disclosure of any information concerning sensitive investigative techniques, current investigations, classified information, informants or security programs such as the Federal Witness Security Program."

62. Then-USA-MA Lelling's October 21st letter also claimed "[t]he requested documents belong to and originated with the SPD" when denying production of the requested documents to the Plaintiff, Anthony D. Gulluni.  USA-MA Lelling's October 21st letter stated, "SPD produced these documents to the [Defendant USA-MA] pursuant to a confidentiality agreement as part of our civil pattern or practice investigation.  Because these documents are available from SPD – a department with which your office likely works daily – they should not be sought from the [Defendant USA-MA]."

63. Then-USA-MA Lelling, in his capacity as lead attorney for the Defendant USA-MA, informed the Plaintiff, Anthony D. Gulluni, that his October 21st letter was "the final

agency decision of the USAO in response to the [Plaintiff's, Anthony D. Gulluni's] *Touhy* request[,]" binding upon the Defendant USA-MA and DOJ DIVISION.

64. Prior to issuing his final agency decision, then-USA-MA Lelling, in his official capacity as lead attorney for the Defendant USA-MA, did not discuss or otherwise negotiate the terms of the Plaintiff's, Anthony D. Gulluni's, *Touhy* requests, or any withdrawal pursuant to 28 C.F.R. § 16.24.

65. AAG Dreiband, in his official capacity for the DOJ DIVISION, never responded, verbally or in writing, to the Plaintiff's, Anthony D. Gulluni's, August 19th or September 14th letters.  AAG Dreiband, in his official capacity for the DOJ DIVISION, has not discussed or otherwise negotiated the terms of  the Plaintiff's, Anthony D. Gulluni's, *Touhy* requests, or any withdrawal pursuant to 28 C.F.R. § 16.24.

66. The plaintiff's, Anthony D. Gulluni's, September 14th letter notified then-AAG Dreiband, in his capacity of the DOJ DIVISION, that a lack of response by September 30, 2020 would be considered a "final agency decision, as those terms are defined by federal administrative and relative case law."

67. The Plaintiff's, Anthony D. Gulluni's September 14th letter notified then-AAG Dreiband, in his official capacity as lead attorney for the DOJ DIVISION, that, without a further response by September 30, 2020, then-AAG Dreiband and DOJ DIVISION's final grounds for withholding the production or disclosure of the demanded reports and attendant photographs or video/digital material would be: (1) the requested false or falsified reports were confidential and (2) available from the SPD; (3) the calculus for exculpatory information was different for the Department of Justice; and, (4) the rules for *Brady* material do not extend to the DOJ DIVISION,:.

68. On December 2, 2020, the Plaintiff, Anthony D. Gulluni, in his official capacity as HDA, wrote a letter to Springfield Police Commissioner Cheryl Clapprood requesting the same documents he had requested from federal investigators of the Defendant USA-MA and DOJ DIVISION.  A copy of the letter is attached, and noted as Exhibit G.  The contents of the letter, in total, are incorporated herein.

69. The Plaintiff's, Anthony D. Gulluni's, December 2nd letter, informed the SPD that his request for these documents "reflects…the need for prosecutors to learn of potential impeachment information regarding all the investigating agents and employees participating in the cases they prosecute, so that they may consider whether the information should be disclosed to defense counsel under the *Brady* and *Giglio* line of cases."  *In the Matter of a Grand Jury Investigation*, 485 Mass. 641, 660 (2020)", and that, "There [was] no other reasonable means available to [his] office to obtain the production or disclosure of the 'false' or 'falsified' [SPD] reports and attendant photographs or video/digital images, as cited in the July 8th Report."

70. On December 10, 2020, Springfield City Solicitor Edward M. Pikula, responded, by letter, that "the City of Springfield has not been provided any information from the Department of Justice specifying any identifying information as to the case numbers, names of specific officers or names of specific criminal defendants described in the Report." A copy of the letter is attached, and noted as Exhibit H.  The contents of the letter, in total, are incorporated herein.

71. Attorney Pikula's December 10th letter confirmed the facts, as told to HDA First ADA Fitzgerald by AUSAs Cumming and Volek during their August 6th telephone conversation*, see supra* at paragraph 41, that the Defendant USA-MA has not advised

the SPD of which of the tens of thousands of reports it had provided to federal investigators during their investigation were false or falsified, as found in the DOJ Report.

72. Attorney Pikula's December 10th letter also informed the District Attorney for Hampden County that all of the materials supplied to federal investigators were available to be reviewed by his office in a "reasonable format and on a reasonable schedule in a phased production, similar to the process followed with the Department of Justice."

73. On March 11, 2021, the Plaintiff, Anthony D, Gulluni, in his official capacity as HDA, wrote a letter to Attorney Pikula, in his capacity as SPD's legal counsel, and informed the SPD, that, as district attorney, he could not, legally or practically, recreate a civil investigation that was conducted by and through a federal statutory scheme; but that he would designate office personnel to review the materials provided to the Defendant USA-MA and DOJ DIVISION in its investigation. Such review was reported to consist of tens of thousands of pages spanning six years. A copy of the letter is attached, and noted as Exhibit I.

74. HDA First ADA Fitzgerald has attempted repeatedly, through Attorney Pikula, to coordinate the procedural logistics of the Plaintiff's, Anthony D. Gulluni's, in his capacity as HDA, review of the requested materials. As of May 18, 2021, the SPD had not provided any documents for review.

## COUNT # 1
## VIOLATIONS OF THE ADMINISTRATIVE PROCEDURE ACT
### 5 U.S.C. §§ 701-706

75. Plaintiff, Anthony D. Gulluni, in his official capacity as District Attorney for Hampden County, repeats and re-alleges each and every allegation as contained in paragraphs #1 through #74, as if fully set forth herein.

76. With indifference to Plaintiff's, Anthony D. Gulluni's, constitutional, statutory and ethical obligations as the primary prosecuting authority in Hampden County, Acting USA-MA Nathaniel R. Mendell, as lead attorney for the Defendant USA-MA has unlawfully withheld or unreasonably delayed the production or disclosure of all SPD reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or  contents of a "prisoner injury file" (as described in the Report, at 7), determined as examples where SPD Narcotics Bureau officers falsified reports to disguise or hide their use of force, as requested in the Plaintiff's, Anthony D. Gulluni's, July 20th oral request of HDA First ADA Fitzgerald and August 19th and September 14th letters to then USA-MA Andrew E. Lelling.

77. With indifference to Plaintiff's, Anthony D. Gulluni's, constitutional, statutory and ethical obligations as the primary prosecuting authority in Hampden County, Acting USA-MA Nathaniel R. Mendell, as lead attorney for the Defendant USA-MA, has unlawfully withheld the production or disclosure of all SPD reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7), determined as "…a pattern or practice …. [where] officers made false reports that were inconsistent with other available evidence, including video and photographs….", as requested in the Plaintiff's, Anthony D. Gulluni's,  July 20th oral request of HDA First ADA Fitzgerald and August 19th and September 14th letters to then USA-MA Andrew E. Lelling.

78. With indifference to Plaintiff's, Anthony D. Gulluni's, constitutional, statutory and ethical obligations as the primary prosecuting authority in Hampden County, Acting USA-MA Nathaniel R. Mendell, as lead attorney for the Defendant USA-MA, has unlawfully withheld or unreasonably delayed the production or disclosure of all photographs, or video/digital material determined as inconsistent with any SPD officers' reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7). as requested in the Plaintiff's, Anthony D. Gulluni's,  July 20th oral request of HDA First ADA Fitzgerald and August 19th and September 14th letters to then USA-MA Andrew E. Lelling.

79. With indifference to Plaintiff's, Anthony D. Gulluni's, constitutional, statutory and ethical obligations as the primary prosecuting authority in Hampden County, Acting USA-MA Nathaniel R. Mendell, as lead attorney for the Defendant USA-MA and DOJ DIVISION, has violated 28 C.F.R. §16.24, by then-USA-MA Lelling and then-AAG Dreiband failing to discuss or otherwise negotiate the terms of the Plaintiff's, Anthony D. Gulluni's, request for the production or disclosure of  "false" or "falsified" Springfield Police Department reports and attendant photographs or video/digital images generally categorized in the publicly released Department of Justice Report, dated July 8, 2020, entitled *Investigation of the Springfield, Massachusetts Police Department's Narcotics Bureau* ("Report"), co-authored by the United States Department of Justice's Civil Rights Division and the United States Attorney's Office for the District of Massachusetts, the prescribed Department of Justice *Touhy*-regulations found at 28 C.F.R. § 16.21 et. seq., prior to the Defendant USA-MA issuing its final agency decision.  Failure to engage in

such discussions or negotiations, as contemplated by 28 C.F.R. § 16.24, is arbitrary, capricious, an abuse of discretion, and not in accordance with law.

80. With indifference to Plaintiff's, Anthony D. Gulluni's, constitutional, statutory and ethical obligations as the primary prosecuting authority in Hampden County, Acting USA-MA Nathaniel R. Mendell, as lead attorney for the Defendant USA-MA and DOJ DIVISION, has violated DOJ28 C.F.R. § 16.24, by then-USA-MA Lelling's and then-AAG Dreiband's failure to produce or disclose any of the "false" or "falsified" Springfield Police Department reports and attendant photographs or video/digital images generally categorized in the publicly released Department of Justice Report, dated July 8, 2020, entitled *Investigation of the Springfield, Massachusetts Police Department's Narcotics Bureau* ("Report"), co-authored by the United States Department of Justice's Civil Rights Division and the United States Attorney's Office for the District of Massachusetts, contrary to the practice and policy of information federal prosecutors routinely seek, evaluate, and disclose pursuant to the United States Department of Justice's so-called *Giglio* Policy, appearing at United States Department of Justice, Justice Manual, Tit. 9-5.100 (updated Jan. 2020) (Manual), https://www.justice.gov/jm/jm-9-50000-issues-related-trials-andother-court-proceedings[https//perma.cc/NKL2-YZ2J]. Failure to disclose such information, as contemplated by the so-called *Giglio* Policy, is arbitrary, capricious, an abuse of discretion, and not in accordance with law.

81. The grounds for the denial of the production or disclosure of all SPD reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or  contents of a "prisoner injury file" (as described in the Report, at 7),

determined as examples where SPD Narcotics Bureau officers falsified reports to disguise or hide their use of force, as requested in the Plaintiff's, Anthony D. Gulluni's, July 20th oral request of HDA First ADA Fitzgerald and August 19th and September 14th letters to then-USA-MA Lelling, founded upon 28 C.F.R. § 16.26(a)(2) and 28 C.F.R. § 16.26 (b)(5), namely: (1) the requested information is privileged by the work product privilege and law enforcement privilege; and, (2) the requested information belongs to the SPD, was subject to a confidentiality agreement, and should be obtained solely from the SPD, by Acting USA-MA Nathaniel R. Mendell, as lead attorney for the Defendant USA-MA, are arbitrary, capricious, an abuse of discretion, and not in accordance with law.

82. The grounds for the denial of the production or disclosure of all SPD reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7), determined as "…a pattern or practice …. [where] officers made false reports that were inconsistent with other available evidence, including video and photographs…," as requested in the Plaintiff's, Anthony D. Gulluni's, July 20th oral request of HDA First ADA Fitzgerald and August 19th and September 14th letters to then-USA-MA Lelling, founded upon 28 C.F.R. §  16.26(a)(2) and 28 C.F.R. § 16.26 (b)(5), namely: (1) the requested information is privileged by the work product privilege and the law enforcement privilege; and, (2) the requested information belonged to the SPD, was subject to a confidentiality agreement, and should be obtained solely from the SPD, by Acting USA-MA Nathaniel R. Mendell, as lead attorney for the Defendant USA-MA, are arbitrary, capricious, an abuse of discretion, and not in accordance with law.

83. The grounds for the denial of the production or disclosure of all photographs, or video/digital material determined as inconsistent with any SPD officers' reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7), as requested in the August 19th and September 14th letters of the Plaintiff, Anthony D. Gulluini, to then-USA-MA Lelling, founded upon 28 C.F.R. § 16.26(a)(2) and 28 C.F.R. § 16.26 (b)(5), namely: (1) the requested information is privileged by the work product privilege and the law enforcement privilege; and, (2) the requested information belonged to the SPD, was subject to a confidentiality agreement, and should be obtained solely from the SPD, by Acting USA-MA Nathaniel R. Mendell, as lead attorney for the Defendant USA-MA, are arbitrary, capricious, an abuse of discretion, and not in accordance with law.

84. The grounds for the denial of the production or disclosure of all SPD reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or  contents of a "prisoner injury file" (as described in the Report, at 7), determined as examples where SPD Narcotics Bureau officers falsified reports to disguise or hide their use of force, as requested in the Plaintiff's, Anthony D. Gulluni's, July 20th oral request of HDA First ADA Fitzgerald and August 19th and September 14th letters to then-AAG Drieband, as lead attorney for the DOJ DIVISION; namely: (1) the requested false or falsified reports were confidential and (2) available from the SPD; (3) the calculus for exculpatory information was different for the Department of Justice; and, (4) the rules for *Brady* material do not extend to the DOJ, as incorporated in the final agency decision of the Defendant USA-MA, by Acting USA-MA Nathaniel R. Mendell,

as lead attorney for the Defendant USA-MA, are arbitrary, capricious, an abuse of discretion and not in accordance with law.

85. The grounds for the denial of the production or disclosure of all SPD reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7), determined as "…a pattern or practice …. [where] officers made false reports that were inconsistent with other available evidence, including video and photographs….", as requested in the Plaintiff's, Anthony D. Gulluni's, July 20th oral request of HDA First ADA Fitzgerald and August 19th and September 14th letters to then-AAG Dreiband, as lead attorney for the DOJ DIVISION, namely: (1) the requested false or falsified reports were confidential and (2) available from the SPD; (3) the calculus for exculpatory information was different for the Department of Justice; and, (4) the rules for *Brady* material do not extend to the DOJ DIVISION, as incorporated in the final agency decision of the Defendant USA-MA, by Acting USA-MA Nathaniel R. Mendell, as lead attorney for the Defendant USA-MA, are arbitrary, capricious, an abuse of discretion and not in accordance with law.

86. The grounds for the denial of the production or disclosure of all photographs, or video/digital material determined as inconsistent with any SPD officers' reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7), as requested in the August 19th and September 14th letters of the Plaintiff, Anthony D. Gulluini, to then-AAG Dreiband, namely: (1) the false or falsified reports were confidential and (2) available from the SPD; (3) the calculus for exculpatory information

was different for the Department of Justice; and, (4) the rules for *Brady* material do not extend to the DOJ DIVISION, as incorporated in the final agency decision of the Defendant USA-MA, by Acting USA-MA Nathaniel R. Mendell, as lead attorney for the Defendant USA-MA, are arbitrary, capricious, an abuse of discretion and not in accordance with law.

## V.   <u>RELIEF</u>

WHEREFORE, Plaintiff, Anthony D. Gulluni, in his official capacity as District Attorney for Hampden County (Commonwealth of Massachusetts), repeats and re-alleges each and every allegation as contained in paragraphs #1 through #86, as if fully set forth herein, and requests this Honorable Court enter judgment against Acting USA-MA Nathaniel R. Mendell, as lead attorney for the Defendant USA-MA, on all counts of this complaint, and

a)   Declare unlawful and set aside the final agency decision on behalf of then-USA-MA Andrew E. Lelling, as lead attorney for the Defendant US-MA that denied, delayed production, or failed to disclose  the "false" or "falsified" SPD reports and attendant photographs or video/digital images, more specifically described in the Plaintiff's, Anthony D. Gulluni's, July 20th oral request of HDA First ADA Fitzgerald, and August 19th and September 14th letters to then-USA-MA Lelling, as lead attorney for the Defendant USA-MA and then-AAG Dreiband, as lead attorney for the DOJ DIVISION, at pp. 4-5, and generally categorized in the publicly released Department of Justice Report, dated July 8, 2020, entitled Investigation of the Springfield, Massachusetts Police Department's Narcotics Bureau ["Report"], co-authored by the Defendant USA-MA and DOJ DIVISION.

b) Declare that Acting USA-MA Nathaniel R. Mendell's, as lead attorney for the Defendant USA-MA's, denial or delayed production or disclosure of the "false" or "falsified" SPD reports and attendant photographs or video/digital images, more specifically described in the Plaintiff's, Anthony D. Gulluni's , July 20th oral request of  HDA First ADA Fitzgerald, and August 19th and September 14th letters to then-USA-MA Lelling, in his capacity as lead attorney for the Defendant USA-MA and then-AAG Dreiband, in his capacity as lead attorney for the DOJ DIVISION, at pp. 4-5, and generally categorized in the publicly released Department of Justice Report, dated July 8, 2020, entitled Investigation of the Springfield, Massachusetts Police Department's Narcotics Bureau ["Report"], co-authored by the Defendant USA-MA and DOJ DIVISION were arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law; and

c) Compel the production of the following materials to the Plaintiff, Anthony D. Gulluni, in his capacity as HDA, as requested in the July 20th oral request of HDA First ADA Fitzgerald, and August 19th and September 14th letters to then-USA-MA Lelling, in his capacity as lead attorney for the Defendant USA-MA and then-AAG Dreiband, in his capacity as lead attorney for the DOJ DIVISION, at pp. 4-5:

(1) A copy of all Springfield Police Department reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7), determined as examples where Narcotics Bureau officers falsified reports to disguise or hide their use of force[;]";

(2) A copy of all Springfield Police Department reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7), determined as "…a pattern or practice …. [where] officers made false reports that were inconsistent with other available evidence, including video and photographs….", and;

(3) A copy of all photographs, or video/digital material determined as inconsistent with any Springfield Police Department officers' reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7).

## VI.   CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully submitted,

Date:  May 18, 2021

/s/  Anthony D. Gulluni
Anthony D. Gulluni
District Attorney for Hampden County
in the Commonwealth of Massachusetts
Roderick L. Ireland Courthouse
50 State Street, 3rd Floor
Springfield, MA.  01102
(413) 505-5901
agulluni@massmail.state.ma.us
BBO # 674246