UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ANTHONY D. GULLUNI, | ) | |
| District Attorney for the Hampden | ) | |
| County in the Commonwealth of | ) | |
| Massachusetts, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:21-cv-30058-MGM |
| | ) | |
| NATHANIEL R. MENDELL, | ) | |
| Acting United States Attorney for | ) | |
| the District of Massachusetts, | ) | |
| | ) | |
| Defendant. | ) | |

## **CERTIFICATION**

I, Jennifer A. Serafyn, Chief of the Civil Rights Unit for the United States

Attorney's Office for the District of Massachusetts, hereby certify that, to the best of

my knowledge, the attached document constitutes a true and accurate list of the

contents of the administrative record for the United States Attorney's Office for the

District of Massachusetts' response to Hampden County District Attorney Anthony

D. Gulluni's request for documents pursuant to the Department of Justice's *Touhy*

regulations.

/s/ Jennifer A. Serafyn
Jennifer A. Serafyn
Chief, Civil Rights Unit
United States Attorney's Office
District of Massachusetts

Date: October 22, 2021

| Bates Number | Tab No. | Date | Author | Recipient | Description |
|---|---|---|---|---|---|
| USAO-001 to USAO-005 | 1 | Oct. 21, 2020 | Andrew E. Lelling, United States Attorney for the District of Massachusetts | Anthony D. Gulluni, District Attorney, Hampden District | Response to *Touhy* Request |
| USAO-006 | 2 | Oct. 21, 2020 | Jennifer Serafyn, Chief, Civil Rights Unit, U.S. Attorney's Office for the District of Massachusetts | Andrew E. Lelling, United States Attorney for the District of Massachusetts; Mary B. Murrane, Chief, Civil Division, U.S. Attorney's Office for the District of Massachusetts | *Touhy* Decision Memo |
| USAO-007 to USAO-014 | 3 | Sept. 14, 2020 | Anthony D. Gulluni, District Attorney, Hampden District | Andrew E. Lelling, United States Attorney for the District of Massachusetts | *Touhy* Request |
| USAO-015 to USAO-019 | 4 | Aug. 20, 2020 | Anthony D. Gulluni, District Attorney, Hampden District | Andrew E. Lelling, United States Attorney for the District of Massachusetts | *Touhy* Request |

Tab 1



**U.S. Department of Justice**

*Andrew E. Lelling*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

October 21, 2020

<u>**VIA U.S. MAIL**</u>

Anthony D. Gulluni
District Attorney
Hampden District
50 State Street
Springfield, MA 01102

RE:     *Touhy Request – Investigation of the Springfield, MA Police Department's*
        *Narcotics Bureau, DOJ Report dated July 8, 2020*

Dear District Attorney Gulluni:

This letter will serve as the formal response of the United States Attorney's Office for the District of Massachusetts ("USAO") to your correspondence dated August 19, 2020 and September 14, 2020 (the "*Touhy* Request"). The letters, submitted pursuant to the Department of Justice's ("DOJ") *Touhy* regulations, codified at 28 C.F.R. Part 16 Subpart B (§§ 16.21-16.29), seeks production of "Springfield Police Department officers' false or falsified reports," as referenced in the DOJ's July 8, 2020 report (the "Report").

You requested that these documents be produced by September 30. We requested an extension, to which you kindly agreed. For the reasons that follow in this final agency decision, the USAO is unable to authorize disclosure of the materials sought in the *Touhy* Request.

<u>**Applicable Regulations and Standards**</u>

As you are aware, the DOJ has promulgated regulations governing its response to a third-party request for the production of documents and information. *See* 28 C.F.R. §§ 16.21-16.29 ("*Touhy* regulations"). Specifically, in matters such as this where there is no proceeding and, therefore, the United States is not a party, the *Touhy* regulations prohibit current and former employees from disclosing "any material contained in the files of the Department" and "any information relating to or based upon material contained in the files of the Department," unless prior approval has been obtained from the proper Department official. 28 C.F.R. § 16.22(a). Section 16.22(d) further requires that a *Touhy* request for documents include "a summary of the information sought and its relevance to the proceeding."

**USAO-001**

District Attorney Anthony D. Gulluni
October 21, 2020
Page 2

The statutory authority for these regulations is found in the Federal Housekeeping Act, 5 U.S.C. § 301, which authorizes the head of every Executive Branch agency to "prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use and preservation of its records, papers and property." *See United States ex. rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951). Courts have recognized that an agency's *Touhy* regulations such as those promulgated by the Department of Justice serve the legitimate purpose of "conserve[ing] government resources when the United States is not a party to a lawsuit and to minimize government involvement in controversial matters unrelated to official business." *Demers v. Buonanno*, C.A. No. 12-676ML, 2012 WL 5930223, at *3 (D. Rhode Island Nov. 2, 2012) (citing *Boron Oil Co. v. Downie*, 873 F.2d 67, 73 (4th Cir. 1989)); *F.A.C., Inc. v. Cooperativa De Seguros De Vida*, 188 F.R.D. 181, 185 (D. Puerto Rico July 21, 1999) (same) (citing *Reynolds Metals Co. v. Crowther*, 572 F. Supp. 288, 290 (D. Mass. 1982)). Such regulations also serve to "centraliz[e] determinations [within the agency] as to whether subpoenas . . . will be willingly obeyed or challenged," thereby avoiding "the possibilities of harm from unrestricted disclosure in court." *Touhy*, 340 U.S. at 468.

The validity of these regulations has been consistently upheld by the United States Supreme Court and courts in numerous jurisdictions. *See, e.g., Touhy*, 340 U.S. at 468 (upholding the FBI's refusal to produce documents sought in a subpoena); *Hasie v. Office of the Comptroller of the Currency of the United States*, 633 F.3d 361 (5th Cir. 2011); *United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007); *In re Elko County Grand Jury*, 109 F.3d 554, 556 (9th Cir. 1997); *Edwards v. United States Dept. of Justice*, 43 F.3d 312, 316-317 (7th Cir. 1994); *Solomon v. Nassau County*, 274 F.R.D. 455, 457 (E.D.N.Y. 2011). In fact, agency housekeeping regulations are accorded the full force and effect of federal law, and a court lacks the authority to compel compliance with a subpoena or other request where such compliance is not authorized pursuant to such regulations. *See Touhy*, 340 U.S. at 468.

The submitted *Touhy* Request appears to have complied with the procedural requirements of 28 C.F.R. § 16.22 for seeking the approval of the relevant Department official for the documents sought and, pursuant to § 16.24, the USAO is tasked with responding to the *Touhy* Request. Production generally is authorized only if the request comports with § 16.26(a) and if none of the factors specified in § 16.26(b) exists with respect to the requested disclosure. 28 C.F.R. § 16.24.

Section 16.26(a) directs Department officials to consider whether the disclosure "is appropriate under the rules of procedure governing the case or matter in which the demand arose," as well as whether it "is appropriate under the relevant substantive law of privilege." Section 16.26(b), in turn, precludes disclosure where any of six enumerated factors exist. Such factors include where "[d]isclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." 28 C.F.R. § 16.26.

**The Touhy Request At Issue**

The *Touhy* Request seeks three categories of documents from the USAO:

2

**USAO-002**

District Attorney Anthony D. Gulluni
October 21, 2020
Page 3

(1) A copy of all Springfield Police Department reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7), determined as examples where Narcotics Bureau officers falsified reports to disguise or hide their use of force[;]";

(2) A copy of all Springfield Police Department reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7), determined as " . . . a pattern or practice . . . [where] officers made false reports that were inconsistent with other available evidence, including video and photographs . . .", and

(3) A copy of all photographs or video/digital material determined as inconsistent with any Springfield Police Department officers' reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7).

In response, pursuant to 28 C.F.R. § 16.26(a)(2) and (b)(5), the USAO declines to authorize production of these documents.

1.  The Requested Information Is Privileged

The *Touhy* Request seeks "all Springfield Police Department Reports . . . *determined* as examples where Narcotics Bureau officers falsified reports" and photographs and videos "*determined* as inconsistent with any Springfield Police Department officers' reports." *Touhy* Request, Aug, 19, 2020, at 4-5 (emphasis added). The documents sought are subject to the work product and law enforcement privileges and are not appropriate for disclosure under 28 C.F.R. § 16.26(a)(2) and (b)(5).

A request for privileged information is beyond the scope of matters that can be released under 28 C.F.R. § 16.26(b). Disclosure is not appropriate for any information that would violate a statute, regulation, court order, such as a sealing order, or rule of procedure, such as the grand jury secrecy rule (Fed. R. Crim. P. 6(e)), or any privileged or classified information. Privileged information includes, but is not limited to, the following:

a.   Disclosures that would reveal the internal deliberation process within the Department of Justice, including the FBI, the Drug Enforcement Administration, the Bureau of Alcohol, Tobacco, Firearms and Explosives, the U.S. Attorney's Office, and other agencies;

b.   Privileged attorney-client communications;

c.   Disclosures that would reveal attorney work product;

d.   Disclosures of information that would threaten or endanger the lives or safety of any individual; and

3

**USAO-003**

District Attorney Anthony D. Gulluni
October 21, 2020
Page 4

    e.      Disclosures that could interfere with ongoing criminal investigations or prosecutions, or reveal investigative or intelligence gathering and dissemination techniques, the effectiveness of which would thereby be impaired.

First, the documents sought are subject to the work product privilege because they reflect the thoughts and impressions of DOJ attorneys, paralegals, and investigators. "Work product that contains 'opinions, judgments, and thought processes of counsel' receives nearly absolute protection from discovery and must be produced only if the party seeking the work product shows an 'extraordinary justification.'" *Cavanaugh v. Wainstein*, 2007 U.S. Dist. LEXIS 40242, at *26 (D.C. Cir. June 4, 2007) (*quoting In re Sealed Case*, 676 F.2d 793, 809-10 (D.C. Cir. 1982).

Here, there is no "extraordinary justification." As prosecutors, we are sympathetic to the need you expressed in your letter "to meet my constitutional, statutory, and ethical obligations" regarding disclosure of information about police misconduct. As you note in your August 19 letter (p. 3, FN 1), however, the thoughts and impressions of USAO and DOJ employees contained in the Report do not amount to "factual findings and legal conclusions binding on, or admissible in, any court." See also Report at 2, FN 2. As such, these mental impressions are protected from disclosure.

Second, this Office has determined that the documents sought are subject to the law enforcement privilege because they would reveal investigative records compiled in connection with an open and ongoing civil investigation. Consequently, disclosure of the requested materials would reveal records compiled for investigative purposes and would interfere with these ongoing law enforcement proceedings.

2.    The Requested Information Belongs To The Springfield Police Department

The *Touhy* Request seeks "all Springfield Police Department reports" including incident reports, investigative reports, arrest reports, and use-of-force reports. The requested documents belong to and originated with the Springfield Police Department (SPD). SPD produced these documents to the USAO pursuant to a confidentiality agreement as part of our civil pattern or practice investigation. Because these documents are available from SPD – a department with which your office likely works daily – they should not be sought from the USAO.

For these reasons, the USAO declines to disclose the information sought by the *Touhy* Request.

**Final Agency Decision**

After carefully considering your request, applying all of the above factors, and reviewing the relevant procedural and substantive law, I have determined that your requests are improper under the applicable substantive and procedural requirements. Therefore, I do not authorize the disclosure of the official information that you have requested.

**USAO-004**

District Attorney Anthony D. Gulluni
October 21, 2020
Page 5

   The forgoing constitutes the final agency decision of the USAO in response to the *Touhy* request.  You have the right to seek judicial review of this decision in the federal district court pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.*

   If you have further questions, please do not hesitate to contact Assistant United States Attorney Jennifer A. Serafyn at (617) 748-3188, or Jennifer.Serafyn@usdoj.gov.

         Sincerely,

         Andrew E. Lelling
         United States Attorney


cc:  Jennifer A. Serafyn, AUSA

**USAO-005**

Tab 2

# Memorandum

*United States Attorney*
*District of Massachusetts*



| Subject:<br>Touhy request from Hampden District<br>Attorney for documents related to Springfield<br>Police Department investigation | Date:<br>October 21, 2020 |
| --- | --- |
| To:<br>Andrew E. Lelling, U.S. Attorney<br>Mary B. Murrane, Chief, Civil Division<br><br>MARY MURRANE Digitally signed by MARY MURRANE<br>Date: 2020.10.21 16:06:23 -04'00' | From:<br>Jennifer A. Serafyn<br>Chief, Civil Rights Unit |

Attached for your review and signature is a letter that declines Hampden County District Attorney Anthony Gulluni's request for documents and information related to our civil pattern or practice investigation of the Springfield Police Department ("SPD"). In two letters to our office, DA Gulluni requested documents – such as incident reports, investigative reports, arrest reports, and use-of-force reports – that we relied upon to make our determination that certain SPD Narcotics Bureau officers falsified reports. DA Gulluni claims to need this information to meet his office's discovery obligations.

Attorney-Client Privilege ████████████████████████
Attorney-Client Privilege █████████████████████████
Attorney-Client Privilege ██████████████████████  Under the relevant *Touhy* regulations, there are independent bases for withholding the requested information, Deliberative Process Privilege ████
Deliberative Process Privilege ████████████████████████

As detailed in the attached letter, DA Gulluni's request should be denied for two reasons. First, the documents and information he seeks are protected by the work product privilege. AUSAs and DOJ trial attorneys made the determinations about falsified reports after a thorough investigation and in consultation with our experts. Second, the documents and information are subject to the law enforcement privilege because they would reveal investigative records compiled in connection with an open and ongoing civil investigation.

Tab 3



COMMONWEALTH OF MASSACHUSETTS
OFFICE OF THE DISTRICT ATTORNEY
HAMPDEN DISTRICT

SUPERIOR COURT
TEL: 413-747-1000
FAX: 413-781-4745

HALL OF JUSTICE
50 STATE STREET
SPRINGFIELD, MASSACHUSETTS 01102

SPRINGFIELD DISTRICT COURT
TEL: 413-747-1001
FAX: 413-747-5628

ANTHONY D. GULLUNI
DISTRICT ATTORNEY

September 14, 2020

Andrew E. Lelling
United States Attorney – District of Massachusetts
United States Attorney's Office – District of Massachusetts
John Joseph Moakley United States Federal Courthouse
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210

**RE:** *Investigation of the Springfield, Massachusetts Police Department's Narcotics Bureau,* **Department of Justice Report, dated July 8, 2020**

Dear United States Attorney Lelling:

In a letter dated August 19, 2020, I requested, pursuant to *5 U.S.C. § 301* and the prescribed Department of Justice *Touhy*-regulations applicable to the request found at *28 C.F.R. § 16.21 et. seq.*, the production or disclosure of "false" or "falsified" Springfield Police Department reports and attendant photographs or video/digital images, and generally categorized in the publicly released Department of Justice report, dated July 8, 2020, entitled *Investigation of the Springfield, Massachusetts Police Department's Narcotics Bureau* ("Report"), co-authored by the United States Department of Justice's Civil Rights Division and the United States Attorney's Office for the District of Massachusetts.[1]  It was asserted then, and remains as my office's position, that any responsive records or papers are necessary for production to my office FORTHWITH to assist me in the exercise of my constitutional, statutory, and ethical obligations to the citizens of Hampden County, including, but not limited to, charged individuals in pending and post-conviction criminal matters in the courts of the Commonwealth.

As previously stated, it is my understanding that due to the federal regulations cited above and relevant case law, see *U.S. ex. rel. Touhy v. Ragen*, 340 U.S. 462 (1951), a District Attorney's subpoena to produce documents, information or objects, pursuant to Massachusetts G.L. c. 277, § 68, or a state court summons to produce documents, information or objects, pursuant to Mass. R. Crim. P. 17 (a)(2), 378 Mass. 885 (1979), each with a specified production date, even if properly served, do not compel the production of the "false" or "falsified" Springfield Police Department officers' reports, or

---

[1] A copy of the letter is attached.  FedEx courier served the letter upon you on August 20, 2020 at 11:41 am.

**USAO-007**

attendant photographs or video/digital images, notwithstanding the language of the subpoena or summons, without prior federal administrative relief being sought. My August 19th letter sought such federal administrative relief. To date, you have not responded to my written request, either orally or in writing, and we have not otherwise discussed or negotiated the terms of my requests or any withdrawal. See *28 C.F.R. § 16.24.*

If I do not receive a written response from you by September 30, 2020, I will consider your lack of response as a denial of my August 19th demand for production or disclosure and a final agency decision, as those terms are defined by federal administrative law, see *28 C.F.R. § 16.25,* and relevant case law, see *Bennett v. Spear,* 520 U.S. 154, 177-178 (1997), by the United States Department of Justice, its Civil Rights Division and the United States Attorney's Office for the District of Massachusetts. The requests are for the following:

(1) A copy of all Springfield Police Department reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7), determined as examples where Narcotics Bureau officers falsified reports to disguise or hide their use of force[;]";

(2) A copy of all Springfield Police Department reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7), determined as "…a pattern or practice …. [where] officers made false reports that were inconsistent with other available evidence, including video and photographs….", and;

(3) copy of all photographs, or video/digital material determined as inconsistent with any Springfield Police Department officers' reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7).

In addition, if I receive no written response from you by September 30, 2020, I also will consider that the final grounds for withholding the production or disclosure of the demanded reports and attendant photographs, see *28 C.F.R. § 16.26 (b)(1) - (6),* are that: (1) the requested false or falsified reports are confidential, (2) the calculus for exculpatory information is different for the Department of Justice, and (3) the rules for *Brady* material do not extend to the Department of Justice's civil rights investigations.

I understand that any appeal from your final decision to produce or disclose the requested "false" or "falsified" Springfield Police Department reports and attendant photographs or video/digital images, as set forth in my August 19th demand letter, is pursuant to the Administrative Procedure Act ("APA"), *5 U.S.C. §§ 701-706.*

The Hampden District Attorney's Office serves a population of 468,467 (est. 2016 Census), in five (5) cities and eighteen (18) towns, and prosecutes cases in five (5) district courts (including Springfield District Court), two (2) juvenile courts (including Springfield Juvenile Court), and one (1) superior court (Hampden County Superior Court). The production or disclosure of "false" or "falsified" Springfield Police Department reports and attendant photographs or video/digital images, originating from a law enforcement department within Hampden County, are necessary to meet the constitutional, statutory, and ethical obligations of my office. A state prosecutor's

USAO-008

discovery obligations concerning potentially exculpatory information include seeking disclosure from those persons under the prosecutor's direction and control, or persons who have participated in investigating or evaluating the case and either regularly report to the prosecutor's office or have done so in a particular case. Mass. R. Crim. P. 14 (a)(1)(A).

It is my understanding that the United State Department of Justice has a policy, known as its *Giglio* [*v. United States*, 405 U.S.150, 155 (1972)] Policy, "…whereby Federal prosecutors obtain potential impeachment information from Federal investigative agencies, such as the Federal Bureau of Investigation, regarding law enforcement agents and employees who may be witnesses in the cases they prosecute." *In the Matter of a Grand Jury Proceeding*,  ___ Mass. ___, 2020 WL 5360068 at 8-9, SJC-12869 at 31 (Slip Op. September 8, 2020), quoting United States Department of Justice, Justice Manual, Tit. 9-5.100 (updated 2020)). This policy "reflects the department's recognition of the need for prosecutors to learn of potential impeachment information regarding all the investigating agents and employees participating in the cases they prosecute, so that they may consider whether the information should be disclosed to defense counsel under the Brady and Giglio line of cases." *In the Matter of a Grand Jury Proceeding*,  ___ Mass. ___, 2020 WL 5360068 at 9, SJC-12869 at 33 (Slip Op. September 8, 2020). My request falls squarely within the type of information your prosecutors routinely seek, evaluate, and disclose.

In Massachusetts, "[t]he district attorney is the people's elected advocate for a broad spectrum of societal interests - from ensuring that criminals are punished for wrongdoing, to allocating limited resources to maximize public protection." *Commonwealth v. Gordon*, 410 Mass. 498, 500 (1991).  See *Commonwealth v. Clerk-Magistrate of West Roxbury Div. of Dist. Court*, 439 Mass. 352, 360 (2003); *Commonwealth v. Clerk of Boston Div. of Juvenile Court Dept.*, 432 Mass. 693, 699 (2000).  There is no other reasonable means available to my office to obtain the production or disclosure of the "false" or "falsified" Springfield Police Department reports and attendant photographs or video/digital images as cited your July 8th Report.  I will continue to seek the truth and pursue justice for the citizens of Hampden County.  If you continue to remain silent, resolution of this matter will proceed per applicable statutes and regulations for such disputes.

Sincerely,

Anthony D. Gulluni
District Attorney
Hampden District

cc: Eric S. Dreiband
    Assistant Attorney General



COMMONWEALTH OF MASSACHUSETTS
OFFICE OF THE DISTRICT ATTORNEY
HAMPDEN DISTRICT

SUPERIOR COURT
TEL: 413-747-1000
FAX: 413-781-4745

HALL OF JUSTICE
50 STATE STREET
SPRINGFIELD, MASSACHUSETTS 01102

SPRINGFIELD DISTRICT COURT
TEL: 413-747-1001
FAX: 413-747-5628

ANTHONY D. GULLUNI
DISTRICT ATTORNEY

August 19, 2020



Andrew E. Lelling,
United States Attorney – District of Massachusetts
United States Attorney's Office – District of Massachusetts
John Joseph Moakley United States Federal Courthouse
1 Courthouse Way, Suite 9200
Boston, Massachusetts  02210

**RE:** *Investigation of the Springfield, Massachusetts Police Department's Narcotics Bureau,* **Department of Justice Report, dated July 8, 2020**

Dear United States Attorney Lelling:

I serve as Hampden District Attorney for the Commonwealth of Massachusetts. In that capacity, I am requesting the production of documents, pursuant to 5 U.S.C. *§ 301* and the prescribed regulations applicable to this request found at *28 C.F.R. § 16.21 et. seq.,* of certain Springfield Police Department reports [more specifically identified below] as named in the publicly released Department of Justice Report, dated July 8, 2020, entitled *Investigation of the Springfield, Massachusetts Police Department's Narcotics Bureau* ["Report"], co-authored by the United States Department of Justice's Civil Rights Division and the United States Attorney's Office for the District of Massachusetts. It is asserted that any responsive records or papers are necessary for production to my office FORTHWITH to assist me in the exercise of my constitutional, statutory, and ethical obligations to the citizens of Hampden County, including, but not limited to, charged individuals in pending and post-conviction criminal matters in the courts of the Commonwealth.

"Ensuring the public's safety is of the first order of government, a duty underlying all government action." *Lavallee v. Justices in Hampden Superior Court*, 442 Mass. 228, 245 (2004). In the Commonwealth of Massachusetts, the District Attorney, by statute, is the governmental official who serves as chief law enforcement officer for his/her respective district. M.G.L., c. 12, §12. See *Commonwealth v. Bing Sial Ling*, 434 Mass. 131, 133 (2001), citing *District Attorney for the Norfolk Dist. v. Flatley*, 419 Mass. 507. 509 n.3 (1995) (recognizing district attorney's position as an elected official and chief law enforcement officer in his district by providing him extraordinary review of legal issues). The district attorney, as a prosecutor, is sworn to uphold the state and federal constitutions, and is required to disclose material, exculpatory evidence in his/her custody or control, to a defendant, *Committee for Pub. Counsel Servs. v. Attorney Gen.*, 480.

**USAO-010**

PAGE TWO
Lelling, A.
August 19, 2020

Mass. 700, 731 (2018); *Brady v. Maryland,*373 U.S. 83, 87 (1963), even without a
request from the defendant. *Commonwealth v. Ayala,* 481 Mass. 46, 56 (2018).  See
*Commonwealth v. Bing Sial Ling,* 434 Mass. at 134-135, citing *United States v. Agurs,*
427 U.S. 97, 106-108 (1976) (prosecutors' duty to  disclose exculpatory evidence not
limited to cases where there is a request for such evidence); *Commonwealth v. Beal,* 429
Mass. 530, 531 (1999) (prosecutors' duty to disclose extends to information in their
possession or in possession of persons subject to their control). See also Mass. R. Crim.
P. 14, as appearing in 442 Mass. 1518 (2004).  "…[I]ssues of Federal and State
sovereignty have the potential to prejudice a defendant being prosecuted in State court by
stymying his or her ability to obtain exculpatory information held by Federal
authorities*." Commonwealth v. Ayala,* 481 Mass. at 56, citing *Commonwealth v.
Donahue,* 396 Mass. 590, 596 (1986).  In addition, ethical obligations "may require a
prosecutor to undertake some procedural and remedial measures as a matter of
obligation," in the exercise of his discovery obligations.  Mass. R. Prof. C. 3.8, Special
Responsibilities of a Prosecutor, 3.8 (d), (g), (i), and (j) and Comment 1.

The Springfield Police Department is a law enforcement agency within Hampden
County.  Officers of the Springfield Police Department are required by statute and rule to
provide arrest, inciden, and investigatory reports to satisfy probable cause determinations
before a magistrate or court.  These reports are then provided to Hampden County
prosecutors to fulfill discovery obligations.  In addition, officers of the Springfield Police
Department testify to the documents' content, under oath, in grand jury proceedings and
pretrial and post-conviction evidentiary hearings of criminally charged individuals in
Hampden Superior Court, Springfield District Court, and Springfield Juvenile Court.

The Executive Summary of the July 8, 2020 Report of the *Investigation of the
Springfield, Massachusetts Police Department's Narcotics Bureau,* Report at 3, states
that investigators jointly from the Department of Justice's Special Litigation Section of
the Civil Rights Division and the United States Attorney's Office for the District of
Massachusetts, conducted a comprehensive review of 114,000 pages of Springfield
Police Department documents, including an unspecified number of  "incident reports"
and "investigative reports".  Notably, Report at 9, the Report states that investigators
sought and received 1,700 prisoner injury files, 26,000 arrest reports and over 700 use-of-
force-reports created from 2013 through 2019.  More specifically, Report at 9, the Report
states that investigators reviewed 5,500 arrest reports and 10 use-of-force reports from
the Springfield Police Department's Narcotics Bureau from 2013-2018.  Found by
investigators, Report at 2, were **"examples where Narcotics Bureau officers falsified
reports to disguise or hide their use of force[;]"** and Report at 16, **"…a pattern or
practice … [where] officers made false reports that were inconsistent with other
available evidence, including video and photographs…."** This information is deemed
to have contributed to the investigators conclusion, Report at 2, that "there is reasonable
cause to believe that Narcotics Bureau officers engage in a pattern or practice of

PAGE THREE
Lelling, A.
August 19, 2020

excessive force in violation of the Fourth Amendment of the United States Constitution."[1]

After the Report was made public, a First Assistant District Attorney with my office received a telephone call from an AUSA with the Civil Rights Division of the United States Attorney's Office for the District of Massachusetts who had been involved in the investigation and issuance of the Report. The AUSA's stated purpose of the telephone call was to inquire if the Hampden District Attorney had "any questions" about the Report. The parties agreed to speak after my office had an adequate time to review the contents of the Report. On July 20, 2020, that First Assistant District Attorney from my office spoke with the AUSA, by telephone, and orally requested that the Hampden District Attorney be provided with the Springfield Police Department reports that investigators referenced in the Report where "officers falsified reports" or "officers made false reports". The First Assistant District Attorney told the AUSA that the assistant district attorneys in the Hampden District Attorney's Office needed to identify the false or falsified reports and review them to determine his/her discovery obligations, pursuant to *Brady* and the Massachusetts Rules of Criminal Procedure. The parties agreed to speak after the AUSA had sufficient time to consider the First Assistant District Attorney's request.

On July 28, 2020, the First Assistant District Attorney left a voice message for the AUSA concerning the status of the July 20th request for the Springfield Police Department officers' false or falsified reports. Later in the day, the First Assistant District Attorney received an email from the AUSA stating that the request for the Springfield Police Department officers' false or falsified reports was still under consideration. Thereafter, on August 6, 2020, the First Assistant District Attorney, the AUSA and another AUSA (who participated in the investigation and issuance of the Report) spoke by telephone. In that telephone conversation, the First Assistant District Attorney's oral request for the production of the Springfield Police Department officers' false or falsified reports was denied. After discussion with members of the Department of Justice's Professional Responsibility Unit and the Civil Rights Division, the Department of Justice concluded it would withhold the Springfield Police Department's false or falsified reports from the Hampden District Attorney. The grounds stated were that the requested false or falsified reports were confidential, the calculus for exculpatory information was different for the Department of Justice, and rules for *Brady* material do not extend to the Department of Justice's civil rights investigations. The First Assistant

---

[1] While I recognize that the authors of the Report note that investigators did not serve "as a tribunal to make factual findings and legal conclusions binding on, or admissible in, any court" see Report at 2, n.2, the reported findings of unconstitutional law enforcement conduct, as described in the twenty-eight page Report, suggest the documents supporting these findings may contain potentially exculpatory material as that term is legally understood, and is subject to my mandatory review to effectively meet the constitutional, statutory and ethical obligations of my office.

PAGE FOUR
Lelling, A.
August 19, 2020

District Attorney again emphasized to each AUSA that the Hampden District Attorney was only seeking the production of Springfield Police Department officers' false or falsified reports, not any confidential, privileged, or investigatory material. The First Assistant District Attorney was told to request the reports from the Springfield Police Department. The First Assistant District Attorney was also informed by the AUSA that the Springfield Police Department did not know which of the thousands of reports it had provided to federal investigators during the investigation were false or falsified, as stated in the Report.

I understand that, in the first instance, due to the federal regulations cited above and relevant case law, see *U.S. ex. rel. Touhy v. Ragen*, 340 U.S. 462 (1951), a District Attorney's subpoena to produce documents, information or objects, pursuant to G.L. c. 277, § 68, or a state court summons to produce documents, information or objects, pursuant to Mass. R. Crim. P. 17 (a)(2), 378 Mass. 885 (1979), even if properly served, is legally insufficient to compel the production of the requested Springfield Police Department officers' reports, or attendant photographs or video/digital images, notwithstanding the language of the subpoena or summons, without prior administrative relief being sought.

My office did not conduct or participate in the investigation with the Department of Justice's Specialized Litigation Unit of the Civil Rights Division or the United States Attorney for the District of Massachusetts and therefore, does not have knowing custody or control of the Springfield Police Department officers' reports deemed false or falsified. Although statutorily serving as the chief law enforcement officer for Hampden County, and thus the chief law enforcement officer within the Springfield Police Department's jurisdiction, the Hampden District Attorney was not served with a copy of the Report from the investigating agencies, and has not been enlisted to assist in developing necessary remedial measures for the constitutional violations found. The Report's investigation spanned twenty-seven months from its initiation to the release of its findings. The scope and timing of the investigation cannot be replicated by my office in any meaningful way so as to meet my constitutional, statutory, and ethical obligations in a timely manner.

Therefore, I make this written request, pursuant to *28 C.F.R. § 16.21 et. seq.*, for:

(1) A copy of all Springfield Police Department reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7), determined as examples where Narcotics Bureau officers falsified reports to disguise or hide their use of force[;]";

PAGE FIVE
Lelling, A.
August 19, 2020

> (2) A copy of all Springfield Police Department reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7), determined as "…a pattern or practice …. [where] officers made false reports that were inconsistent with other available evidence, including video and photographs….", and;
>
> (3) copy of all photographs, or video/digital material determined as inconsistent with any Springfield Police Department officers' reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7).

I do NOT request any other documents from the investigation, including any contents of IIU files, training materials, or other internal, confidential or privileged documents of the Springfield Police Department provided to investigators, or incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7) determined not to contain false or falsified information, or statements, notes or recordings of investigators' interviews with Springfield Police Department officers, City of Springfield officials or community members.  I also do not request the disclosure of any information concerning sensitive investigative techniques, current investigations, classified information, informants or security programs such as the Federal Witness Security Program.

Cooperation is sought for a quick resolution of this request, and is necessary for me to meet my constitutional, statutory, and ethical obligations to the people I have been elected to serve.  As you know, seeking the truth and the pursuit of justice are the bedrock principles of our work as prosecutors. If you have questions or concerns arising from this office's need for this information, please contact me by telephone at (413) 505-5901.

Very truly yours,

Anthony D. Gulluni
District Attorney
Hampden District

cc: Eric S. Dreiband, Assistant Attorney General
    Department of Justice, Civil Rights Division

Tab 4



COMMONWEALTH OF MASSACHUSETTS
OFFICE OF THE DISTRICT ATTORNEY
HAMPDEN DISTRICT

SUPERIOR COURT
TEL: 413-747-1000
FAX: 413-781-4745

HALL OF JUSTICE
50 STATE STREET
SPRINGFIELD, MASSACHUSETTS 01102

SPRINGFIELD DISTRICT COURT
TEL: 413-747-1001
FAX: 413-747-5628

ANTHONY D. GULLUNI
DISTRICT ATTORNEY

August 19, 2020

AUG 2 0 2020

Andrew E. Lelling,
United States Attorney - District of Massachusetts
United States Attorney's Office - District of Massachusetts
John Joseph Moakley United States Federal Courthouse
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210

**RE:**  *Investigation of the Springfield, Massachusetts Police Department's Narcotics Bureau,* **Department of Justice Report, dated July 8, 2020**

Dear United States Attorney Lelling:

      I serve as Hampden District Attorney for the Commonwealth of Massachusetts. In that capacity, I am requesting the production of documents, pursuant to 5 U.S.C. *§ 301* and the prescribed regulations applicable to this request found at *28 C.F.R. § 16.21 et. seq.*, of certain Springfield Police Department reports [more specifically identified below] as named in the publicly released Department of Justice Report, dated July 8, 2020, entitled *Investigation of the Springfield, Massachusetts Police Department's Narcotics Bureau* ["Report"], co-authored by the United States Department of Justice's Civil Rights Division and the United States Attorney's Office for the District of Massachusetts. It is asserted that any responsive records or papers are necessary for production to my office FORTHWITH to assist me in the exercise of my constitutional, statutory, and ethical obligations to the citizens of Hampden County, including, but not limited to, charged individuals in pending and post-conviction criminal matters in the courts of the Commonwealth.

      "Ensuring the public's safety is of the first order of government, a duty underlying all government action." *Lavallee v. Justices in Hampden Superior Court*, 442 Mass. 228, 245 (2004). In the Commonwealth of Massachusetts, the District Attorney, by statute, is the governmental official who serves as chief law enforcement officer for his/her respective district. M.G.L., c. 12, §12. See *Commonwealth v. Bing Sial Ling*, 434 Mass. 131, 133 (2001), citing *District Attorney for the Norfolk Dist. v. Flatley*, 419 Mass. 507. 509 n.3 (1995) (recognizing district attorney's position as an elected official and chief law enforcement officer in his district by providing him extraordinary review of legal issues). The district attorney, as a prosecutor, is sworn to uphold the state and federal constitutions, and is required to disclose material, exculpatory evidence in his/her custody or control, to a defendant, *Committee for Pub. Counsel Servs. v. Attorney Gen.*, 480.

**USAO-015**

PAGE TWO
Lelling, A.
August 19, 2020

Mass. 700, 731 (2018); *Brady v. Maryland,*373 U.S. 83, 87 (1963), even without a
request from the defendant. *Commonwealth v. Ayala*, 481 Mass. 46, 56 (2018).  See
*Commonwealth v. Bing Sial Ling*, 434 Mass. at 134-135, citing *United States v. Agurs*,
427 U.S. 97, 106-108 (1976) (prosecutors' duty to  disclose exculpatory evidence not
limited to cases where there is a request for such evidence); *Commonwealth v. Beal*, 429
Mass. 530, 531 (1999) (prosecutors' duty to disclose extends to information in their
possession or in possession of persons subject to their control). See also Mass. R. Crim.
P. 14, as appearing in 442 Mass. 1518 (2004).  "…[I]ssues of Federal and State
sovereignty have the potential to prejudice a defendant being prosecuted in State court by
stymying his or her ability to obtain exculpatory information held by Federal
authorities*." Commonwealth v. Ayala*, 481 Mass. at 56, citing *Commonwealth v.
Donahue*, 396 Mass. 590, 596 (1986).  In addition, ethical obligations "may require a
prosecutor to undertake some procedural and remedial measures as a matter of
obligation," in the exercise of his discovery obligations.  Mass. R. Prof. C. 3.8, Special
Responsibilities of a Prosecutor, 3.8 (d), (g), (i), and (j) and Comment 1.
        The Springfield Police Department is a law enforcement agency within Hampden
County.  Officers of the Springfield Police Department are required by statute and rule to
provide arrest, inciden, and investigatory reports to satisfy probable cause determinations
before a magistrate or court.  These reports are then provided to Hampden County
prosecutors to fulfill discovery obligations.  In addition, officers of the Springfield Police
Department testify to the documents' content, under oath, in grand jury proceedings and
pretrial and post-conviction evidentiary hearings of criminally charged individuals in
Hampden Superior Court, Springfield District Court, and Springfield Juvenile Court.
        The Executive Summary of the July 8, 2020 Report of the *Investigation of the
Springfield, Massachusetts Police Department's Narcotics Bureau,* Report at 3, states
that investigators jointly from the Department of Justice's Special Litigation Section of
the Civil Rights Division and the United States Attorney's Office for the District of
Massachusetts, conducted a comprehensive review of 114,000 pages of Springfield
Police Department documents, including an unspecified number of  "incident reports"
and "investigative reports".  Notably, Report at 9, the Report states that investigators
sought and received 1,700 prisoner injury files, 26,000 arrest reports and over 700 use-of-
force-reports created from 2013 through 2019.  More specifically, Report at 9, the Report
states that investigators reviewed 5,500 arrest reports and 10 use-of-force reports from
the Springfield Police Department's Narcotics Bureau from 2013-2018.  Found by
investigators, Report at 2, were **"examples where Narcotics Bureau officers falsified
reports to disguise or hide their use of force[;]"** and Report at 16, **"…a pattern or
practice … [where] officers made false reports that were inconsistent with other
available evidence, including video and photographs…."** This information is deemed
to have contributed to the investigators conclusion, Report at 2, that "there is reasonable
cause to believe that Narcotics Bureau officers engage in a pattern or practice of

**USAO-016**

PAGE THREE
Lelling, A.
August 19, 2020

excessive force in violation of the Fourth Amendment of the United States Constitution."[1]

      After the Report was made public, a First Assistant District Attorney with my office received a telephone call from an AUSA with the Civil Rights Division of the United States Attorney's Office for the District of Massachusetts who had been involved in the investigation and issuance of the Report. The AUSA's stated purpose of the telephone call was to inquire if the Hampden District Attorney had "any questions" about the Report. The parties agreed to speak after my office had an adequate time to review the contents of the Report. On July 20, 2020, that First Assistant District Attorney from my office spoke with the AUSA, by telephone, and orally requested that the Hampden District Attorney be provided with the Springfield Police Department reports that investigators referenced in the Report where "officers falsified reports" or "officers made false reports". The First Assistant District Attorney told the AUSA that the assistant district attorneys in the Hampden District Attorney's Office needed to identify the false or falsified reports and review them to determine his/her discovery obligations, pursuant to *Brady* and the Massachusetts Rules of Criminal Procedure. The parties agreed to speak after the AUSA had sufficient time to consider the First Assistant District Attorney's request.

      On July 28, 2020, the First Assistant District Attorney left a voice message for the AUSA concerning the status of the July 20th request for the Springfield Police Department officers' false or falsified reports. Later in the day, the First Assistant District Attorney received an email from the AUSA stating that the request for the Springfield Police Department officers' false or falsified reports was still under consideration. Thereafter, on August 6, 2020, the First Assistant District Attorney, the AUSA and another AUSA (who participated in the investigation and issuance of the Report) spoke by telephone. In that telephone conversation, the First Assistant District Attorney's oral request for the production of the Springfield Police Department officers' false or falsified reports was denied. After discussion with members of the Department of Justice's Professional Responsibility Unit and the Civil Rights Division, the Department of Justice concluded it would withhold the Springfield Police Department's false or falsified reports from the Hampden District Attorney. The grounds stated were that the requested false or falsified reports were confidential, the calculus for exculpatory information was different for the Department of Justice, and rules for *Brady* material do not extend to the Department of Justice's civil rights investigations. The First Assistant

---

[1] While I recognize that the authors of the Report note that investigators did not serve "as a tribunal to make factual findings and legal conclusions binding on, or admissible in, any court" see Report at 2, n.2, the reported findings of unconstitutional law enforcement conduct, as described in the twenty-eight page Report, suggest the documents supporting these findings may contain potentially exculpatory material as that term is legally understood, and is subject to my mandatory review to effectively meet the constitutional, statutory and ethical obligations of my office.

PAGE FOUR
Lelling, A.
August 19, 2020

District Attorney again emphasized to each AUSA that the Hampden District Attorney was only seeking the production of Springfield Police Department officers' false or falsified reports, not any confidential, privileged, or investigatory material. The First Assistant District Attorney was told to request the reports from the Springfield Police Department. The First Assistant District Attorney was also informed by the AUSA that the Springfield Police Department did not know which of the thousands of reports it had provided to federal investigators during the investigation were false or falsified, as stated in the Report.

I understand that, in the first instance, due to the federal regulations cited above and relevant case law, see *U.S. ex. rel. Touhy v. Ragen*, 340 U.S. 462 (1951), a District Attorney's subpoena to produce documents, information or objects, pursuant to G.L. c. 277, § 68, or a state court summons to produce documents, information or objects, pursuant to Mass. R. Crim. P. 17 (a)(2), 378 Mass. 885 (1979), even if properly served, is legally insufficient to compel the production of the requested Springfield Police Department officers' reports, or attendant photographs or video/digital images, notwithstanding the language of the subpoena or summons, without prior administrative relief being sought.

My office did not conduct or participate in the investigation with the Department of Justice's Specialized Litigation Unit of the Civil Rights Division or the United States Attorney for the District of Massachusetts and therefore, does not have knowing custody or control of the Springfield Police Department officers' reports deemed false or falsified. Although statutorily serving as the chief law enforcement officer for Hampden County, and thus the chief law enforcement officer within the Springfield Police Department's jurisdiction, the Hampden District Attorney was not served with a copy of the Report from the investigating agencies, and has not been enlisted to assist in developing necessary remedial measures for the constitutional violations found. The Report's investigation spanned twenty-seven months from its initiation to the release of its findings. The scope and timing of the investigation cannot be replicated by my office in any meaningful way so as to meet my constitutional, statutory, and ethical obligations in a timely manner.

Therefore, I make this written request, pursuant to *28 C.F.R. § 16.21 et. seq.,* for:

(1) A copy of all Springfield Police Department reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7), determined as examples where Narcotics Bureau officers falsified reports to disguise or hide their use of force[;]";

PAGE FIVE
Lelling, A.
August 19, 2020

      (2) A copy of all Springfield Police Department reports, including, but not limited
           to incident reports, investigative reports, arrest reports, use-of-force reports, or
           contents of a "prisoner injury file" (as described in the Report, at 7), determined
           as "…a pattern or practice …. [where] officers made false reports that were
           inconsistent with other available evidence, including video and
           photographs….", and;
      (3) copy of all photographs, or video/digital material determined as inconsistent
           with  any Springfield Police Department officers' reports, including, but not
           limited to incident reports, investigative reports, arrest reports, use-of-force
           reports, or contents of a "prisoner injury file" (as described in the Report, at 7).

I do NOT request any other documents from the investigation, including any contents of
IIU files, training materials, or other internal, confidential or privileged documents of the
Springfield Police Department provided to investigators, or incident reports, investigative
reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as
described in the Report, at 7) determined not to contain false or falsified information, or
statements, notes or recordings of investigators' interviews with Springfield Police
Department officers, City of Springfield officials or community members.  I also do not
request the disclosure of any information concerning sensitive investigative techniques,
current investigations, classified information, informants or security programs such as the
Federal Witness Security Program.

        Cooperation is sought for a quick resolution of this request, and is necessary for
me to meet my constitutional, statutory, and ethical obligations to the people I have been
elected to serve.  As you know, seeking the truth and the pursuit of justice are the
bedrock principles of our work as prosecutors. If you have questions or concerns arising
from this office's need for this information, please contact me by telephone at (413) 505-
5901.

Very truly yours,

Anthony D. Gulluni
District Attorney
Hampden District

cc:  Eric S. Dreiband, Assistant Attorney General
      Department of Justice, Civil Rights Division

**USAO-019**