**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| ──────────────────────── ) | |
| Anthony Gulluni, ) | |
| ) | |
|        Plaintiff, ) | |
| ) | |
|        v. ) | Civil Action No. |
| ) | 21-30058-NMG |
| United States Attorney for the ) | |
| District of Massachusetts, ) | |
| ) | |
|        Defendant. ) | |
| ──────────────────────── ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from an investigation conducted by the United States Department of Justice ("DOJ") of the Narcotics Bureau of the Springfield, Massachusetts Police Department ("SPD"). Based upon a comprehensive review of materials provided by SPD, inter alia, DOJ concluded that members of the Bureau had engaged in a pattern and practice of using excessive force and that officers lied in connection with some of the underlying incidents and internal SPD documentation. Anthony Gulluni ("Gulluni" or "plaintiff"), the Hampden County District Attorney ("HCDA"), subsequently sought SPD records from DOJ that contributed to those findings. DOJ denied the request and, ultimately, HCDA initiated this litigation to obtain those

- 1 -

records.  Pending before this Court are cross-motions for
summary judgment.

## I.  **Background**

In April, 2018, DOJ initiated an investigation into SPD's
Narcotics Bureau pursuant to the Violent Crime Control and Law
Enforcement Act of 1994, 34 U.S.C. § 12601.  The investigation,
which culminated in a report released to the public in July,
2020, involved a comprehensive review of more than 114,000 pages
of incident reports, investigative reports, policies, training
materials and other internal documents from SPD, as well as
interviews with SPD officers, Springfield officials and
community members.  The report was highly critical of SPD,
citing both specific instances of misconduct and general
failures of the department.  In sum, DOJ concluded that members
of the Narcotics Bureau engaged in a pattern and practice of
using excessive force and that officers lied in connection with
some incidents, including by falsifying documents to disguise or
hide their use of force.  Although the report cited some
specific instances of misconduct, the names of the involved
persons and the dates of the misconduct were omitted.

After the report was released, HCDA made an initial, oral
request to DOJ for the SPD documents relied upon in the report.

Approximately two weeks after that request was made, on August 6, 2020, DOJ denied it orally.

On August 19, 2020, Gulluni pursued the matter by issuing letters to Assistant Attorney General Eric Dreiband, the lead attorney for DOJ's Civil Rights Division, and Andrew Lelling, the United States Attorney for the District of Massachusetts, the two offices that co-authored the relevant report. Those letters were identical in content and, citing federal regulations and governing case law, requested documents that had originally been produced to DOJ by SPD and subsequently were referenced in the report. Specifically, the letters requested: (1) documents determined to be examples of officers falsifying reports to disguise or hide their use of force, (2) documents that revealed a pattern or practice of officers making false reports that were inconsistent with other available evidence and (3) photographs or other digital material inconsistent with officers' reports. In part, the letters argued that HDCA required the materials to determine its constitutional discovery obligations pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963).

After Gulluni sent a second set of letters reiterating his request, Lelling responded via electronic mail on October, 29, 2020. In his response, Lelling declined to provide the

materials sought on the grounds that they were privileged, pursuant to both the work product privilege and the law enforcement privilege, and belonged to SPD.  The letter stated that it represented the final agency decision concerning the August, 2020 request.  Dreiband never responded verbally or in writing to the request.

Gulluni subsequently attempted to obtain the relevant material from SPD but learned, through a letter from the Springfield City Solicitor, that DOJ had not provided the City or SPD with any information that would allow the police department or any other branch of the local government to identify the materials that had been relied upon to form the conclusions contained in the report.  The Springfield City Solicitor informed Gulluni that all the materials supplied to DOJ would be made available to HCDA, although repeated attempts to coordinate the logistics of such a review have been unsuccessful.

In May, 2021, HCDA initiated this action contending that DOJ's failure to disclose the requested information based upon the enumerated privileges was arbitrary, capricious, an abuse of discretion and not in accordance with law, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.

II. __Motion for Summary Judgment__

      **A. Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law...." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v.

Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is
appropriate if, after viewing the record in the non-moving
party's favor, the Court determines that no genuine issue of
material fact exists and that the moving party is entitled to
judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

### B. Standard and Scope of Review

A reviewing court may reverse the decision of an executive
agency, such as DOJ, to withhold requested material only if that
decision was "arbitrary, capricious, an abuse of discretion, or
otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A);
see Commonwealth of Puerto Rico v. United States, 490 F.3d 50,
61 (1st Cir. 2007).

> Judicial review is accordingly severely limited, and
> courts are only free to determine whether the agency
> followed its own guidelines or committed a clear error
> of judgment.  [Courts] may not substitute [their] own
> judgment for that of an agency.

Commonwealth of Puerto Rico v. United States (D.P.R. Sept. 26,
2006), aff'd, 490 F.3d 50 (1st Cir. 2007) (quotations and
citations omitted).  In reviewing such a decision, a court
therefore looks to both the agency's internal regulations and
the substantive law governing the legal justification for the
denial of the request. Id.  Courts are generally limited in that
review to the administrative record. Camp v. Pitts, 411 U.S.
138, 142 (1973) (per curiam).

Pursuant to the Housekeeping Act, 5 U.S.C. § 301, DOJ has promulgated regulations governing its response to information requests.  Those rules are set forth at 28 C.F.R. § 16.21 <u>et seq</u>. and are commonly known as <u>Touhy</u> regulations, in reference to <u>United States ex rel. Touhy</u> v. <u>Ragen</u>, 340 U.S. 462, 468 (1951) (upholding authority of executive agencies to promulgate regulations establishing conditions for disclosure of information).  Those regulations, which "are only procedural, and do not create a substantive entitlement to withhold information[,]" <u>Commonwealth</u>, 490 F.3d at 62, provide that DOJ is to consider, <u>inter alia</u>, the "substantive law concerning privilege" in deciding whether disclosure is appropriate. 28 C.F.R. § 16.26(a)(2).  Among the kinds of requests that the regulations enumerate as those that should be denied are those that:

> would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired

28 C.F.R. § 16.26(b)(5).

Gulluni argues that the typical deference accorded to the actions of administrative agencies pursuant to 5 U.S.C. § 706(2)(A) does not apply here because DOJ acted "contrary to constitutional right, power, privilege of immunity," 5 U.S.C. § 706(2)(B).  The problem with that reasoning is that, while a

reviewing court need "not defer to the agency's pronouncement on constitutional issues," <u>NYC C.L.A.S.H., Inc.</u> v. <u>Carson</u>, 442 F. Supp. 3d 200, 209 (D.D.C. 2020), that standard has not been extended to circumstances where, as here, the plaintiff has not brought a constitutional claim.  Gulluni has enumerated only a claim pursuant to the APA and, while the constitutional rights of defendants prosecuted by HCDA may be implicated pursuant to the disclosure requirements of <u>Brady</u>, 373 U.S. at 87, those rights do not belong to the plaintiff presently before the Court.  For that reason, insofar as constitutional rights implicate the applicable scope of review, <u>Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth</u> v. <u>United States Dep't of Health & Hum. Servs.</u>, 557 F. Supp. 3d 224, 245 (D. Mass. 2021), that analysis is also irrelevant.

### C. Application

As an initial matter, defendant contends that the issue presented is moot because HCDA has, with the assistance of SPD, already identified the incidents that gave rise to the allegations of falsification contained in the report.  Thus, according to defendant, HCDA can obtain the requested materials directly from SPD, rather than relying upon DOJ as the intermediary.  Defendant also contends that the matter is unripe for a related reason: the Court is being asked to speculate on a

hypothetical, rather than live, dispute because HCDA has access to that which it seeks.

Those arguments are refuted by the record before this Court.  In his communication with HCDA, the Springfield City Solicitor identified 23 incidents described in the DOJ report, some of which implicated issues of officer falsification and/or inconsistency.  The Solicitor was able to link most of those incidents with arrest records and/or other SPD documentation, thereby providing HCDA enough information to pursue further investigation.

The Solicitor was, however, unable to identify the underlying events in four of the incidents, which include both general and specific statements concerning officer misconduct. As such, the information provided by the Solicitor to HCDA does not moot the prevailing question in this litigation because: (1) while HCDA was able to obtain certain records regarding the identified incidents, it remains unclear whether all the documentation relied upon by DOJ concerning those incidents has been provided, (2) the Solicitor has been unable to identify records concerning four of those incidents, notwithstanding the fact that some of them are general statements that presumably involve multiple incidents, and (3) HCDA lacks confirmation that the incidents identified by the Solicitor are, in fact, those

that DOJ relied upon in its report.  For those reasons, HCDA has
not been able to acquire the records it seeks and the matter is
therefore neither moot nor unripe.

The Court therefore proceeds to consider each of the
alleged justifications that DOJ offered in withholding the
relevant information and concludes that the agency did not
violate the APA in denying the request.

In his October, 2020 letter, United States Attorney Lelling
first explained that the materials requested could not be
supplied because they were subject to the attorney work product
privilege.  That privilege:

> protects work done by an attorney in anticipation of,
> or during, litigation from disclosure to the opposing
> party.

State of Maine v. U.S. Dep't of Interior, 298 F.3d 60, 66 (1st
Cir. 2002).  See Hickman v. Taylor, 329 U.S. 495 (1947).  The
privilege has, however, been extended to a select grouping of
documents where the "selection process itself
represents...counsel's mental impressions and legal opinions."
Sporck v. Peil, 759 F.2d 312, 314-315 (3d Cir. 1985).

> [T]he identification and selection of documents is
> within the less-shielded category of ordinary work
> product but not within the highly protected category
> of opinion work product.

Bamberg v. KPMG, LLP, 219 F.R.D. 33, 36 (D. Mass. 2003)
(quoting, in part, In re San Juan Dupont Plaza Hotel Fire

Litigation, 859 F.2d 1007, 1015–1017 (1st Cir., 1988)).

Ordinary work product is subject to disclosure

> where a party demonstrates a substantial need for the
> information and an undue hardship should it not be
> produced.

United States v. Cadden, No. CR 14-10363-RGS, 2015 WL 5737144,

at *2 (D. Mass. Sept. 30, 2015) (quoting, in part, In re San

Juan, 859 F.2d at 1015)).

   Typically, the work product privilege is invoked in

discovery disputes pursuant to Federal Rule of Civil Procedure

26 and serves to shield materials that would reveal the

litigation strategy of opposing counsel.  That purpose is, of

course, not relevant here, where the materials sought have the

potential to implicate litigation not against the requester but

rather against a third-party entity (i.e. SPD).  Nevertheless,

in light of the deferential standard applicable to DOJ's legal

determinations, this Court cannot say that DOJ made a "clear

error of judgment," Davis Enter. v. EPA, 877 F.2d 1181, 1186 (3d

Cir.1989), in concluding that the requested materials are

subject to the work product privilege or finding that Gulluni

failed to satisfy the stringent requirements that would justify

disclosure notwithstanding that determination.

   The selection of materials relied upon by DOJ in its report

would undoubtedly have yielded "a glimpse" into the agency's

analysis, which ultimately led to the execution of a consent decree between the DOJ and SPD. In re San Juan, 859 F.2d at 1018.  Moreover, the availability of the requested materials from SPD undermines Gulluni's substantial need for the information from DOJ and the significant progress HCDA has already made in identifying the materials also reduces any undue hardship that may arise from the denial.

Nor can this Court conclude that the denial of the Touhy request pursuant to the law enforcement privilege was arbitrary and capricious.  In his letter denying the request of Gulluni, Mr. Lelling justified the invocation of that privilege upon "an open and ongoing civil investigation."  Courts have long recognized a qualified privilege for certain kinds of information related to the activities of law enforcement. See Roviaro v. United States, 353 U.S. 53 (1957).  Over time, that privilege has been extended to materials that, if disclosed, would reveal "law enforcement techniques and procedures" and thereby frustrate "the public interest in effective law enforcement[.]" Commonwealth, 490 F.3d at 64.  The First Circuit Court of Appeals has emphasized that the privilege is appropriately invoked where disclosure might jeopardize future government investigations. See United States v. Cintolo, 818 F.2d 980, 983-84 (1st Cir. 1987).  The privilege is, however, not absolute and is

subject to balancing the federal government's interest
in preserving the confidentiality of sensitive law
enforcement techniques against the requesting party's
interest in disclosure.

Commonwealth, 490 F.3d at 64.

HDCA appropriately contends that the materials it seeks
from DOJ reveal somewhat less information regarding a government
investigation than that which has been previously shielded by
the law enforcement privilege.  In Cabral, for example, the
information sought included the method of communication used by
federal investigators and thus directly implicated investigative
techniques. Cabral, 587 F.3d at 23.  Nevertheless, this Court
concludes that DOJ's denial of the request was reasonable under
the deferential standard of review prescribed by the APA based
on the department's interest in preserving the materials that
formed the foundation of the resulting report and ultimate
consent decree.

The execution of that consent decree in April, 2022 does
not undermine defendant's reasoning because it is irrelevant to
this Court's assessment of the adequacy of DOJ's invocation of
the privilege at the time it was made in October, 2020.  DOJ's
interest in withholding the materials is particularly strong
because HDCA did not propose rules or regulations governing
their use or publication and public disclosure might decrease
the willingness of local police departments to share records

with DOJ in the future. <u>Commonwealth</u>, 490 F.3d at 68, 62.  For those reasons, the denial of Gulluni's request based on the law enforcement privilege was not unreasonable and the claim of Gulluni pursuant to the APA cannot prevail.

**ORDER**

For the foregoing reasons, the motion of plaintiff for summary judgment (Docket No. 18) is **DENIED**, and the motion of defendant for summary judgment (Docket No. 24) is **ALLOWED**.


**So ordered.**

<u>/s/ Nathaniel M. Gorton</u>
Nathaniel M. Gorton
United States District Judge

Dated September 6, 2022